UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| SIDNEY BOURNE, CLAUDIO M. DELISE, and RALPH S. TYLER, <br><br>          Appellants <br><br> v. <br><br> NORTHWOOD PROPERTIES, LLC, <br><br>          Appellee | Case No. 1:06-CV-11781-WGY |

ON APPEAL FROM DECISION OF UNITED STATES BANKRUPTCY COURT FOR THE
DISTRICT OF MASSACHUSETTS

BRIEF OF APPELLEE
NORTHWOOD PROPERTIES, LLC

ATTORNEYS FOR APPELLEE
Jeffrey D. Ganz, BBO #564375
Christopher M. Condon, BBO #652430
Riemer & Braunstein LLP
Three Center Plaza
Boston, Massachusetts 02108
(617) 523-9000
(617) 880-3456

# TABLE OF CONTENTS

TABLE OF AUTHORITIES …………………………………………………3

INTRODUCTION ……………………………………………………5

STATEMENT OF ISSUES PRESENTED AND
STANDARDS OF REVIEW ………………………………………………5

STATEMENT OF THE CASE …………………………………………6

Nature and Course of Proceedings …..……………..……………………6

Statement of Facts Relevant to
Issues Presented for Review …………………..……………………8

*The Phasing Rights Motion and
the Northwood at Sudbury Master Deed* …………………..……………………9

*The Claims of the Appellants* …………………..……………………11

*Confirmation of the Debtor's Plan of
Reorganization* …………………..……………………12

ARGUMENT …………………..……………………15

I.      The Express Written Consent of Bourne,
Delise, and Their Spouses Was not Required for
the Association to Extend the Deadline for the
Debtor to Amend the Master Deed to Add
Phases to the Development …………………..……………………16

II.     The Bankruptcy Court Did Not Err When
It Confirmed the Debtor's Plan of
Reorganization …………………..……………………22

    A. The Debtor Properly Modified the First
    Amended Plan Prior to Confirmation …………………..……………………22

    B. The Bankruptcy Court's Finding that
    the Second Amended Plan was Feasible
    Was Not Clearly Erroneous …………………..……………………26

CONCLUSION …………………..……………………27

DEBTOR'S APPENDIX

Exhibit 1 - Docket

Exhibit 2 - Plan of Reorganization

Exhibit 3 -  Order re Disclosure Statement

Exhibit 4 - First Amended Plan

Exhibit 5 - Appellants' Plan Objection

Exhibit 6 - Motion to Assume

Exhibit 7 - Bourne and Delise Objection to Motion to Assume

Exhibit 8 - Order re Motion to Assume

Exhibit 9 - Extension Amendment

Exhibit 10 - Objection to Tyler Claim

Exhibit 11 - Response to Tyler Objection

Exhibit 12 - Notices of Claims Transfers

Exhibit 13 - Appellant's Plan of Reorganization

Exhibit 14 - Statement of Ballots Received

Exhibit 15 - Exhibits Entered by Debtor at Confirmation

Exhibit 16 - Text of Mass.Gen.L. ch. 183A § 5, repealed January 1, 1986

Exhibit 17 - Text of Mass.Gen.L. ch. 183A § 5 (2006)

Exhibit 18 - Text of 11 U.S.C. § 1122 (2006)

Exhibit 19 - Text of 11 U.S.C. § 1123 (2006)

Exhibit 20 - Text of 11 U.S.C. § 1127 (2006)

Exhibit 21 - Text of 11 U.S.C. § 1124 (2006)

Exhibit 22 - Appellants' Opposition to Northwood Properties, LLC Motion to Dismiss

Exhibit 23 - *In re River Valley Fitness One L.P.,* 2003 Bankr. LEXIS 1252 (Bankr. D. N.H. September 19, 2003)

Exhibit 24 - Text of 11 U.S.C. § 1129 (2006)

## TABLE OF AUTHORITIES

Mass. Gen. Laws c. 183A, § 5 (repealed January 1, 1986)        ………………..…..17, 18

Mass.Gen.L. c. 183A § 5 (2006)        ………………..…16, 20

11 U.S.C. § 1122 (2006)        …………..……..22, 24

11 U.S.C. § 1123 (2006) ………………………..22

11 U.S.C. 1124 (2006) ………………………..23

11 U.S.C. 1127 (2006) ………………………..22

11 U.S.C. 1129 (2006) ………………………..26

*Beal Bank S.S.B. v. Waters Edge L.P.*, 248 B.R. 668 (D. Mass. 2000) ……………..…...22, 25

*B & T Masonry Constr. Co. v. Pub. Serv. Mutual Insur. Co.*, 382 F.3d 36 (1st Cir. 2004) ………………………..19

*Haseotes v. Cumberland Farms*, 216 B.R. 690 (D. Mass. 1997) ………….….……..5, 6

*Hutner v. Cape Codder Condominium Board of Trustees*, 52 Mass.App.Ct. 429 (2001) ………………………..16

*Lebowitz v. Heritage Heights, Inc.*  See 8 L.C.R. 295 (2000) ………..…………...19, 20

*In re River Valley Fitness One L.P.*, 2003 Bankr. LEXIS 1252 (Bankr. D. N.H. September 19, 2003) ………………………..25

*Suprenant v. First Trade Union Sav. Bank,* 40 Mass.App.Ct. 637 (1996) ……………..……...18, 20

*Teamsters Union v. Superline Transp. Co.*, 953 F.2d 17 (1st Cir. 1992) ………………………..20

*Viola v. Millbank II Assoc.,* 44 Mass.App.Ct. 82 (1997) ………..…17, 18, 19, 20, 22

## INTRODUCTION

This appeal represents the latest effort by Sidney Bourne, Claudio Delise, and Ralph Tyler to strip Northwood Properties LLC of its valuable assets, to procure the right to develop additional phases of the Northwood at Sudbury Condominium, and to delay and derail the plan of reorganization confirmed by the Bankruptcy Court, all for their own personal gain.  In support of these aims, the Appellants ask this Court to accept their tortured reading of cases which interpret prior versions of the Massachusetts condominium statute, without acknowledging the manner in which those statutes have been revised.  They also ask this Court to overturn the confirmation of a plan of reorganization which called for the payment in full of the allowed claims they hold.  The Bankruptcy Court recognized the ulterior motives present in the Appellants' actions, rejected their attempt to wrest control of the rights to complete the unfinished phases of the condominium development and confirmed the plan of reorganization. In doing so, the Bankruptcy Court committed no error and its decisions should be affirmed.

## STATEMENT OF ISSUES PRESENTED AND STANDARD OF REVIEW

1.      Whether the United States Bankruptcy Court for the District of Massachusetts committed an error of law when it held that the express written consent of Sidney Bourne, Claudio Delise, and their respective spouses, was not required in order for the Northwood at Sudbury Condominium Trust to extend the deadline for Northwood Properties, LLC to amend the Master Deed to add phases to the development at Northwood Sudbury Condominium?  The District Court reviews the Bankruptcy Court's ruling of law under a *de novo* standard.  *Haseotes v. Cumberland Farms*, 216 B.R. 690, 692 (D. Mass. 1997).

2.      Whether the United States Bankruptcy Court for the District of Massachusetts committed an error of law when it allowed Northwood Properties, LLC and Tashmoo Cove

Realty, Inc. to modify their plan of reorganization in such a way as to provide payment in full for all allowed claims held by the Appellants, thereby improving the treatment of those claims from the original plan and addressing several of the objections to confirmation raised by the Appellants, even though this improvement would result in the elimination of the Appellants' ability to formally vote against the plan?  The District Court reviews the Bankruptcy Court's ruling of law under a *de novo* standard.  *Haseotes v. Cumberland Farms*, 216 B.R. 690, 692 (D. Mass. 1997).

3.      Whether the United States Bankruptcy Court for the District of Massachusetts was clearly erroneous when it found that confirmation of the *Second Amended Chapter 11 Plan of Reorganization of Northwood Properties, LLC Proposed Jointly by Northwood Properties, LLC and Tashmoo Cove Realty, Inc.* would not likely be followed by the liquidation, or the need for further financial reorganization, after conducting an evidentiary hearing at which time Northwood Properties, LLC presented evidence supporting its position that the plan was economically feasible and the Appellants elected to present no contrary evidence?  The District Court reviews the findings of fact of the Bankruptcy Court to determine whether they were clearly erroneous.  *See* Fed.R.Bankr.P. 8013.

## STATEMENT OF THE CASE

<u>Nature and Course of Proceedings</u>

Northwood Properties, LLC (the "Debtor") is the Appellee herein and the debtor in the bankruptcy proceeding pending in the United States Bankruptcy Court, captioned as *In re Northwood Properties, LLC*, Chapter 11 Case No. 05-18880-RS (the "Bankruptcy Case").  *See* Debtor's Appendix, Ex. 1 (Docket).  *See also* Appellants' Appendix Ex. 17, Modified First Amended Plan (D.N. 303).   During the course of the Bankruptcy Case, two of the Appellants,

Sidney Bourne ("Bourne") and Claudio Delise ("Delise"), challenged the ability of the Northwood at Sudbury Condominium Trust (the "Association") to extending the deadline for the Debtor to complete construction of the additional phases contemplated by the master deed establishing the Northwood Sudbury Condominium (the "Master Deed") without the express written consent of Messrs. Bourne, Delise, and their spouses.  *See* Appellants' Appendix Ex. 3-4, Bourne-Delise Phasing Rights Motion (D.N. 72), Northwood's Opposition (D.N. 81).  This dispute was first presented to the Bankruptcy Court by the *Motion by Sidney Bourne and Claudio Delise for a Determination that Extension of the Phasing Rights Requires Their Consent in Accordance with M.G.L. c. 183A § 5(b)(1)* (the "Phasing Rights Motion"). *See* Appellants' Appendix Ex.  3, Bourne-Delise Phasing Rights Motion (D.N. 72). The matter was fully briefed and argued before the Bankruptcy Court during a non-evidentiary hearing on March 21, 2006. *See* Debtor's Appendix, Ex. 1 (Docket).

On March 23, 2006 the Debtor and Tashmoo Cove Realty, Inc. ("Tashmoo"), the Debtor's largest creditor and its managing member, filed a disclosure statement and proposed plan of reorganization.  *See* Debtor's Appendix, Ex. 2 (Plan of Reorganization)  *See also* Appellants' Appendix Ex. 18, Second Amended Disclosure Statement (D.N. 216).  The disclosure statement was approved on June 6, 2006 and a hearing set for July 18, 2006 to address confirmation of the proposed plan of Reorganization.   *See* Debtor's Appendix, Ex. 3 (Order re Disclosure Statement),  Debtor's Appendix, Ex. 4 (First Amended Plan).  The Appellants objected to the plan of reorganization and the Debtor and Tashmoo submitted a modified plan of reorganization which called for, among other things, the payment in full of all claims held by Appellants to the extent such claims were allowed by the Bankruptcy Court.  *See* Appellants' Appendix Ex.  16-17, Statement of Plan Modification and Modified First Amended

Reorganization Plan (D.N. 303).  *See also* Debtor's Appendix, Ex. 5 (Appellants' Plan

Objection).   The viability of both the original and modified plan of reorganization was

predicated upon a denial of the Phasing Rights Motion. *See* Appellants' Appendix Ex.  17,

Modified First Amended Reorganization Plan (D.N. 303) § 5.

On July 18, 2006, immediately before conducting the confirmation hearing, the

Bankruptcy Court announced its ruling denying the relief requested in the Phasing Rights

Motion.  *See* Appellants' Appendix Ex.  1, Transcript of Bankruptcy Court Decision on Phasing

Rights Motion (D.N. 359).  The Bankruptcy Court then conducted an evidentiary hearing to

address whether the modified Plan of Reorganization should be confirmed.    *See* Debtor's

Appendix, Ex. 1 (Docket).  Each of the Appellants was present at the hearing, had a full and fair

opportunity to participate in the hearing, and, indeed, did participate in that hearing.  At the

conclusion of that hearing, the Bankruptcy Court confirmed the modified plan of reorganization.

*See* Appellants' Appendix Ex.  2, Transcript of Bankruptcy Court Decision Regarding

Confirmation Hearing (D.N. 358).  This appeal then ensued, although the Appellants failed to

include as parties to the appeal Tashmoo (the co-proponent of the plan of reorganization) and

Northwood at Sudbury Condominium Trust (the association of unit owners).

Statement of the Facts Relevant to the Issues Presented for Review.

In large part, the Appellants have accurately portrayed the facts relevant to this dispute in

the section of their brief entitled, Statement of Relevant Material Facts.  The Debtor adopts the

statements contained in that section of the Appellants' brief at paragraphs 1, 2, 3, 4, 5, 6, 7, 9, 10,

11, 12, 15, 16, 19, 20, 21, 22, 24, 25, 26, 27, 28, and 29.  Paragraphs 8, 13, 14, 17, 18, 23, and 30

of this section of the Appellants' brief are not complete or accurate and, therefore, the Debtor

does not adopt those allegations of fact.  To provide the Court with a complete record of the facts

underlying the issues on appeal, the Debtor submits the following additional facts:

*The Phasing Rights Motion and the Northwood at Sudbury Master Deed*

4.      The Master Deed describes a plan to build a five-phased development which

would eventually total several residential buildings and a clubhouse.  *See* Appellants' Appendix

Ex.  10, Northwood Master Deed § 3.   It states that "when and if all phases are completed, the

Condominium will contain sixty-six (66) units." *Id*.

5.      Pursuant to the Master Deed, Peter M. Conant and Richard A. Welch, Jr.,

Trustees of Northwood Realty Trust (collectively, the "Grantor") reserved for the Grantor the

rights to complete the unfinished phases of the Development (the "Phasing Rights").  *See id*. at

§ 7.2.

6.      By its terms, the Master Deed also provided that each unit owner - by accepting

the deed to his or her unit - consented to the terms under which the Grantor was entitled to

complete the Development with the following language in section 7.2(C):

> C.       Each Unit Owner, by acceptance of the delivery of the Deed to a Unit, and any
> mortgagee, by recording a mortgage on a Unit, shall thereby have consented to the provisions of Section
> 7.1 and 7.2, including without limitation, the right of the Grantor, its successors and assigns, to amend the
> Master Deed pursuant to this Section 7 and to alter the common area percentages established for Units,
> without the requirement or necessity of securing any further consent or execution of any further document
> from the Owner or mortgagee of such Unit. . . .

*See id.*

7.      The Phasing Rights were scheduled to expire on December 9, 2005.  *See id*.

8.      The Debtor acquired all of the Grantor's right title and interest in the

Development through the plan of reorganization confirmed in a bankruptcy proceeding captioned

as, *In re Northwood at Sudbury Realty Corporation*, Chapter 11 Case No. 00-14967-CJK before

the United States Bankruptcy Court for the District of Massachusetts. *See* Appellants' Appendix

Ex.  18, Second Amended Disclosure Statement (D.N. 216).

9.     The Debtor was not able to complete the Development before the Phasing Rights were scheduled to expire, so the Debtor began negotiations with Bruce Steiner, Josephine Whittington, Barbara Murphy and Patrick Alias (the "Trustees") as trustees of the Northwood at Sudbury Condominium Trust (the "Association"), seeking to extend the Phasing Rights.   *See* Debtor's Appendix, Ex. 6 (Motion to Assume).  The result of these negotiations was an agreement between the Association and the Debtor dated June 16, 2005 (the "June 16th Agreement"), whereby the Debtor paid more than $700,000 to the Association for maintenance and other matters related to the Development and the Association agreed to extend the Phasing Rights through December 9, 2010.  *See id*.

10.     Subsequently, the Debtor filed a voluntary bankruptcy petition under Chapter 11 of the Bankruptcy Code. *See* Appellants' Appendix Ex.  18, Second Amended Disclosure Statement (D.N. 216).  *See also* Debtor's Appendix, Ex. 1 (Docket).

11.     Notwithstanding the Debtor's bankruptcy filing, on November 22, 2005, a significant majority of the unit owners at Northwood at Sudbury Condominium (83.33%) of all ratified the Association's extending of the Phasing Rights in the June 16th Agreement.   *See* Debtor's Appendix, Ex. 6 (Motion to Assume) at Exhibit B.  The only unit owners who objected to the June 16th Agreement were Bourne and Delise.  *See id.  See also* Debtor's Appendix, Ex. 7 (Bourne and Delise Objection to Motion to Assume).

12.     The Debtor was authorized to assume the rights and obligations of the June 16th Agreement pursuant to Section 365 of the Bankruptcy Code by an order of the Bankruptcy Court dated December 8, 2005.   *See* Debtor's Appendix, Ex. 8 (Order re Motion to Assume).

13.    Pursuant to the terms of the June 16th Agreement, the Association recorded an amendment to the Master Deed reflecting the extension on March 7, 2006.   *See* Debtor's Appendix, Ex. 9 (Extension Amendment).

*The Claims of the Appellants*

14.    At the time it filed its voluntary petition, the Debtor had only five unsecured claims against it held by non-insider creditors: $50.00 owed to NStar (the "NStar Claim"); $50.00 owed to KeySpan (the "KeySpan Claim"); $305.92 owed to GZA Environmental (the "GZA Claim"); $622,270 allegedly owed to Tyler (the "Tyler Claim"); and approximately $1.5 million allegedly owed to the Association (the "Association Claim").  During the bankruptcy proceeding, the Debtor filed an objection to the Tyler Claim.   *See* Debtor's Appendix, Ex. 10 (Objection to Tyler Claim), Debtor's Appendix Ex. 11 (Response to Tyler Objection).

15.    Although Bourne and Delise were unit owners of the Northwood at Sudbury Condominium, they did not hold claims against the Debtor at the time it filed its bankruptcy petition.  Between March 27, 2006 and March 28, 2006, Bourne purchased the NStar Claim for $50.00, Delise purchased the GZA Claim for $305.92, and Tyler purchased the KeySpan Claim for $50.00.   *See* Debtor's Appendix, Ex. 12 (Notices of Claims Transfers).

16.    According to Tyler, the Tyler Claim is grounded in Tyler's request for payment to him of fees attributable to his efforts in successfully defending a pre-petition suit brought by the Debtor.  *See* Debtor's Appendix Ex. 11 (Response to Tyler Objection).

17.    In that lawsuit, as in this appeal, Tyler was not represented by counsel and he incurred no legal fees during his defense. *See id.  See also* Debtor's Appendix, Ex. 10 (Objection to Tyler Claim).  Notwithstanding these facts, the Tyler Claim is entirely comprised of Tyler's claim for an award of legal fees to himself in the amount of $622,270.00. *See id.*

While Tyler is not a lawyer, he calculated this sum by unilaterally determining that the services he provided himself at the trial court level were worth "$300 per hour or $2,400 per day with the 2001 market rate for legal services of the type and quality of those provided by Tyler . . .."  For the work appellate work on this pre-petition suit, Tyler increased his hourly rate "to $350 per hour . . .."*See id.*

18.      As noted in his support for the Tyler Claim, and the Debtor's Objection to the Tyler Claim, Tyler sought, first at the Middlesex Superior Court and then at various appellate level Courts, to be awarded fees for "legal services", even though he is not a licensed attorney to practice law in Massachusetts. *See id.*  The lengthy attachment to the Tyler Claim chronicles Tyler's original failed attempt to have the Middlesex Superior court award him fees for legal services under Massachusetts law.  *See id.*  No order from any court in Massachusetts awarded Tyler fees for his supposed legal services.  *See id.*

19.      The Debtor objected to the Tyler Claim on the grounds that it has no basis in law of fact. *See id.*  The Bankruptcy Court held a hearing on the Tyler Claim on June 20, 2006 and the matter remains under advisement.  *See* Debtor's Appendix Ex. 1 (Docket).  The Debtor continues to contend that the Tyler Claim has no basis for allowance and should be denied in its entirety.

*Confirmation of the Debtor's Plan of Reorganization*

20.      On or about May 10, 2006, the Debtor and Tashmoo filed the *First Amended Chapter 11 Plan of Reorganization of Northwood Properties, LLC Proposed Jointly by Northwood Properties, LLC and Tashmoo Cove Realty, Inc.*, (the "First Amended Plan"). *See* Debtor's Appendix Ex. 4 (First Amended Plan).  The Disclosure Statement for the First Amended Plan was approved on June 6, 2006 and an evidentiary hearing to address confirmation

of that plan was set for July 18, 2006.  *See* Debtor's Appendix Ex. 3 (Order re Disclosure Statement).

21.     Among other terms and conditions, the First Amended Plan grouped all non-insider, unsecured claims within the same class: Class 1 Allowed Unsecured Claims.  *See* Debtor's Appendix Ex. 4 (First Amended Plan) at § 3.  These claims included all five unsecured, non-insider claims.  *See id.* at §§ 3-4.  Under this plan, the Debtor proposed that these five claims - to the extent they were allowed - receive an initial distribution of 5% of the allowed amount of those claims and, thereafter, eventually receive a pro rata distribution from the cash subsequently received by the Debtor as a result of its eventual sale of either (i) the Phasing Rights to a third-party developer or (ii) the condominium units to be developed by the Debtor.  *See id.* at § 4. Under this plan, there was no guaranty that such claims would receive a distribution of more than 5% of the allowed amount of the claim and there was no date certain by which any amount over the 5% would be paid. *See id.* at § 4.

22.     On June 21, 2006 Bourne, Delise and Tyler filed a competing plan of reorganization and accompanying disclosure statement. *See* Debtor's Appendix Ex. 13 (Appellant's Plan of Reorganization).  Among other terms and conditions, this plan provided that Bourne, Delise and Tyler would take over both the management and ownership of the Debtor and its assets.  *See id.*  By doing so, the Appellants would earn lucrative management fees and all profits obtained from the sale of either the Phasing Rights or the condominium units to be developed.  *See id.*  The disclosure statement associated with this plan was never approved by the Bankruptcy Court and the plan was never submitted to the creditor body for a vote.  *See* Debtor's Appendix Ex. 1 (Docket).

23.     On July 11, 2006, Bourne, Delise, and Tyler filed an objection to the First

Amended Plan asserting, among other things, that the First Amended Plan was not feasible.  *See*

Debtor's Appendix Ex. 5 (Appellant's Plan Objection).

24.     On July 11, 2006, the Debtor and Tashmoo modified the First Amended Plan

through their filing of the *Second Amended Chapter 11 Plan of Reorganization of Northwood*

*Properties, LLC Proposed Jointly by Northwood Properties, LLC and Tashmoo Cove Realty,*

*Inc.*, (the "Second Amended Plan"). *See* Appellants' Appendix Ex.  17, Modified First Amended

Reorganization Plan (D.N. 303).

25.     The Second Amended Plan created a new class of claims under Class 1 for all

unsecured claims in an allowed amount less than $750.00.  *See id.* at § 3.  This Convenience

Class included each of the three claims acquired by the Appellants during the Debtor's

bankruptcy proceeding.  *See id.*  The Second Amended Plan provided that all Convenience Class

claims would be paid in full, immediately upon the Effective Date.  *See id.* at §§ 3-4.

26.     The modified plan also placed the disputed Tyler claim in a separate class,

identified as Class 2 under the Second Amended Plan.  *See id.* at §§ 3-4.  As with the

Convenience Class, the Second Amended Plan provided that the Tyler claim would be paid in

full upon the entry of a final, non-appealable order allowing that claim in a specific amount.

Depending upon the timing of the entry of such an order, the Second Amended Plan provided

that the Tyler claim could be satisfied from a variety of the Debtor's assets.  *See id.* at § 4.

27.     The Second Amended Plan also created a separate class for the Association

Claim.  *See id.* at §§ 3-4.  Similar to its treatment in the First Amended Plan, this claim would be

paid over time, subject to the proceeds reaped by the Debtor as a result of the sale of the Phasing

Rights or the condominiums it chose to develop.  *See id.* at § 4.  Notwithstanding the proposed

treatment of its claim, the Association voted for, and support confirmation of, the Second

Amended Plan.  *See* Debtor's Appendix Ex. 14 (Statement of Ballots Received)

28.     Immediately prior to conducting the confirmation hearing, the Bankruptcy Court

denied the Phasing Rights Motion and read its ruling into the record.  *See* Appellants' Appendix

Ex. 1, Transcript of Bankruptcy Court Decision on Phasing Rights Motion (D.N. 359).

29.     At the July 18, 2006 hearing on confirmation of the Second Amended Plan, the

Debtor presented testimony and documentary evidence in support of its plan, including, but not

limited to, financial projections, sales histories, offers to purchase and/or refinance the Debtor

based upon the Phasing Rights, and the testimony of Ross Hamlin, the Debtor's principal.  *See*

Debtor's Appendix Ex. 15 (Exhibits Entered by Debtor at Confirmation).  Although they

subjected Mr. Hamlin to cross-examination, none of the Appellants offered any evidence in

support of their positions.  *See* Appellants' Record on Appeal, July 18, 2006 Hearings, Judge

Somma.

30.     At the conclusion of the confirmation hearing, the Bankruptcy Court confirmed

the Second Amended Plan and read its findings of fact and rulings of law into the record. *See*

Appellants' Appendix Ex. 2, Transcript of Bankruptcy Court Decision Regarding Confirmation

Hearing (D.N. 358).

## ARGUMENT

In denying the Phasing Rights Motion and confirming the Second Amended Plan, the

Bankruptcy Court adhered to the requirements of the Massachusetts condominium statute and the

Bankruptcy Code and rejected the attempts by Bourne, Delise, and Tyler to "wrest control" of

the Debtor.  Its decisions are grounded in the language of these statutory frameworks and

supported by the evidence presented by the Debtor.  The Bankruptcy Court has committed no error of law and its rulings and findings should not be disturbed.

**I.     The Express Written Consent of Bourne, Delise, and Their Spouses Was Not Required for the Association to Extend the Deadline for the Debtor to Amend the Master Deed to Add Phases to the Development.**

The Association's efforts to extend the Phasing Rights were governed by  Mass. Gen. Laws c. 183A, § 5(b)(2)(iii).  This portion of the Massachusetts condominium statute which empowers the governing body of an organization of unit owners to, under certain circumstances, act on behalf of all unit owners to "[e]xtend, revive or grant rights to develop the condominium, including the right to add additional units or land to the condominium."  *See* Mass. Gen. Laws c. 183A, § 5(b)(2)(iii); *Hutner v. Cape Codder Condominium Board of Trustees*, 52 Mass.App.Ct. 429, 432-33 (2001).  Bourne and Delise do not dispute that the Association obtained the requisite percentage of unit owners or otherwise complied with the technical requirements of § 5(b)(2)(iii).[1]  Instead, they argue that any agreement by the Association to extend the Phasing Rights was prohibited by Mass. Gen. Laws c. 183A, § 5(b)(1) which provides that:

> The percentage of the undivided interest of each unit owner in the common areas and facilities as expressed in the master deed shall not be altered without the consent of all unit owners whose percentage of the undivided interest is materially affected, expressed in an amendment to the master deed duly recorded; provided, however, that **the acceptance and recording of the unit deed shall constitute consent by the grantee to the addition of subsequent units or land or both to the condominium and consent to the reduction of the undivided interest of the unit owner if the master deed at the time of the recording of the unit deed provided for the addition of units or land and made**

---

[1] Although Appellant Tyler appears to have joined in all aspects of this appeal, he was not a party to the Phasing Rights Motion and he has no standing to participate in this aspect of the parties' dispute because he is not a unit owner.  Moreover, Bourne and Delise have failed to name the Association as a party to this appeal.  Where the appeal of the denial of the Phasing Rights Motion clearly implicates the interests of the Association, it is unclear how this Court can grant the relief sought by Bourne and Delise in its absence.

<u>**possible an accurate determination of the alteration of each**</u>
<u>**unit's undivided interest that would result therefrom**</u>.

[emphasis added].  Bourne and Delise interpret the highlighted portion of this provision to mean that a unit owner consents to an adjustment of his or her interests in the common areas of a condominium only when the master deed specifically provides a rigid formula or defined schedule of percentage interests to be owned by each unit owner upon the completion of each phase of the development.  *See* Appellants' Brief at 16-19.

Based on this interpretation, Bourne and Delise argue that if the master deed does not contain a specific rigid formula or schedule, then any developer seeking to amend the master deed to include additional phases and any association seeking to "extend, revive, or grant" development rights under § 5(b)(2)(iii) must first obtain the written consent of 100% of the unit owners in accordance with § 5(b)(1).[2]  They have failed, however, to cite to any decision which supports this overly restrictive interpretation of the relationship between these two portions of the statute.  Instead, they rely upon decisions which interpret older versions of the condominium statute which do not contain the relevant language.  For example, the principal decision relied upon by Bourne and Delise for this point - *Viola v. Millbank II Assoc.* - was issued before § 5(b)(1) included a consent component at all.  <u>See</u> 44 Mass.App.Ct. 82, 83, n. 4 (1997) (citing to, and quoting from, the version of Mass.Gen.L. c. 183A, § 5(b) that was effective from January 1, 1996 to August 6, 1998).  While this older version did not incorporate the that concept, it did authorize the association of unit owners to extend the expiration deadline for development right

---

[2] Although Bourne and Delise assert that "Most Phased condominiums provide full and complete disclosure of the future percentage interests," there is simply no support for this proposition in the record before this Court or in any decision relied upon by the parties.  *See* Appellant's Brief, at 30-31.  As such, this statement should be disregarded by the Court.

by an affirmative vote of 75% of the unit owners.  *See* Mass.Gen.L. c. 183(A), § 5(b) (repealed and replaced, August 7, 1998), reprinted at Appellants' Appendix, Ex. 25

The Massachusetts Appeals Court decision in *Suprenant v. First Trade Union Sav. Bank* referenced by Bourne and Delise, however, was based upon an even earlier version of the statute which failed to include the consent provision and also failed to include any provision authorizing the association of unit owners to extend the expiration deadline for development rights.  *See* 40 Mass.App.Ct. 637, n. 3 (1996); Mass.Gen.L. c. 183A,  § 5(b) (repealed January 1, 1996) [a copy of this version of the statute is annexed hereto as Appellee's Appendix, Ex. 1].  In the absence of any authority being granted to any party to act on behalf of the unit owners, the Appeals Court in *Suprenant* was constricted by the earlier statute and rightly held that the developer was required to obtain unanimous, express consent of all unit owners in order to revive expired development rights.  *See Suprenant*, 40 Mass.App.Ct. at 640-41.  As both *Suprenant* and *Viola* interpret prior versions of § 5(b)(2)(iii), Bourne and Delise have thus misplaced their reliance upon these decisions.

In *Viola*, the Appeals Court found that a developer had the authority to amend the master deed to reflect the completion of additional phases once they were constructed without first obtaining the express written consent of 100% of the unit owners.  *See Viola*, 44 Mass.App.Ct. 85-87.  The primary basis for this holding was that the master deed already contained a separate schedule for each phase of the development which showed each unit owner's percentage ownership interest in the common areas upon the completion of each phase.  *See id*. at 86.  Based on these schedules, the Appeals Court held that each unit owner's interest in the common areas "as expressed in the master deed" was an "initial entitlement" only and that, upon the completion of successive phases, that "percentage entitlement is reduced and remains fixed until the

18

completion" of the next phase.  *See id*.  Thus, the master deed proscribed the nature of the unit

owners' respective interests at the time when they first acquired those interests, so the addition of

phases contemplated by the master deed would not alter those interests and the unanimous

consent of all unit owners would not be required.

Contrary to the assertions of Bourne and Delise, however, *Viola* does not require the

master deed to disclose precise future percentage interests or enable their precise calculation at

the time the unit deed is accepted.  As noted above, the Appeals Court in *Viola* approved the

developer's actions in light of the precise nature of the schedule of changing ownership interests

reflected in the master deed.  It did not hold that such an explicit and restrictive set of schedules

was required to avoid the need to obtain the unanimous and express consent of all unit owners to

implement each completed phase.  Indeed, no decision relied upon by Bourne and Delise makes

such a pronouncement under either the old or the new statutory framework.

To support their strained reading of *Viola*, Bourne and Delise ask this Court to look to the

Land Court's interpretation of the that decision found in the case of *Lebowitz v. Heritage

Heights, Inc.*  See 8 L.C.R. 295 (2000).  However, the *Lebowitz* decision, which was issued in

response to a developer's motion for reconsideration of a denial of its unilateral attempt to

extend the deadline for it to amend the master deed, explicitly found that "*Viola* and Section

5(b)(1) have no impact on the court's First Decision."  *Id*.  Accordingly, the Land Court's

comments about the relationship between *Viola* and the 1998 amendments to § 5(b) were clearly

made in dicta and cannot provide a basis for the definitive interpretation which Bourne and

Delise seek.  Even if the argument based upon the *Lebowitz* decision were not flawed, Bourne

and Delise failed to present this argument to the Bankruptcy Court and, thus, waived that issue.

Accordingly, this Court should not rule on it for the first time on appeal.  *See B & T Masonry*

*Constr. Co. v. Pub. Serv. Mutual Insur. Co.*, 382 F.3d 36, 40 (1st Cir. 2004) (*quoting, Teamsters Union v. Superline Transp. Co.*, 953 F.2d 17, 21 (1st Cir. 1992).

The Statute of Frauds argument presented by Bourne and Delise on appeal suffers from the same fundamental problem as the previous argument relying upon *Lebowitz* argument because it was not raised below. *See id*. If this Court were inclined to consider that argument at this time, it could be dispensed with directly by focusing on an inherent flaw in logic. In asserting that the Statute of Frauds required Bourne and Delise to execute a writing in order to transfer their interest in the common areas of the development, they presume that their respective unit deeds gave them a fixed and irreducible share of those common areas. If, however, Bourne and Delise were given only a right to "an undivided interest in the common areas and facilities ... in the approximate relation that the fair value" of their units in relation to the "aggregate fair value of all the units," with the possibility that this interest would change in accordance with the terms of c. 183, § 5(b) and the terms of the master deed, then any adjustment of their interests in the common areas would be consistent with - and not contrary to - that limited property right. *See Viola*, 44 Mass.App.Ct at 86 (holding that the property rights held by unit owners at the time they were first acquired were subject to reduction and, thus, when they were reduced no transfer of property rights occurred).

As noted above, Bourne and Delise cannot find support for their position in either *Viola* or *Suprenant* because those decisions do not interpret the provisions of Chapter 183A which are relevant to whether the Association had the authority to extend the deadline for the Debtor to exercise the Phasing Rights. That they have overreached in their attempt to have the apparent restrictions of § 5(b)(1) overrun the authority granted to the association by § 5(b)(2)(iii), is evidenced by the text of § 5(b)(2)(iii). The latter section describes the circumstances under

which the association of unit owners - not the developer - may extend the right of a developer to

develop the condominium.  In that section, the statute specifically provides that consent of not

less than 75 % of owners of units within the condominium is sufficient authority for the

association to

> "Extend, revive or grant rights to develop the condominium, including the right to add additional units or land to the condominium. . . upon such terms and conditions as the organization of unit owners may deem appropriate including the method or formula by which the percentage interest of each unit is to be set in accordance with subsection (a) of section 5, or in accordance with another method which the organization of unit owners reasonably determines is fair and equitable under the circumstances, following such extension, revival, grant, addition or withdrawal **if not specified in the master deed**;

Thus, the statute contemplates that less than 100% of unit owners can empower an association to

extend, grant or revive development rights even when "the method or formula by which the

percentage interest of each unit is to be set" is not set forth in the deed.  If the overly restrictive

interpretation of § 5(b)(1) advocated by Bourne and Delise were accurate, then this portion of §

5(b)(2) would directly contradict it.

Fortunately,[3] the Bankruptcy Court found a less restrictive interpretation of § 5(b)(1)

which renders it compatible with § 5(b)(2)(iii).  In lieu of referring to the Oxford English

Dictionary or some similarly comprehensive source, the Bankruptcy Court simply relied upon

---

[3] While the Debtor certainly benefits from the Bankruptcy Court's interpretation of these statutory provisions, Bourne and Delise do as well.  Each of them acquired units in building two of the Northwood at Sudbury Condominium, which was developed as the second phase.  When building two was completed, however, the Debtor recorded an amendment to the master deed which provided, for the first time, the new percentage ownership interests in the common areas held by the unit owners in both building one and building two.  *See* Appellants' Appendix, Exs. 11, 12.  The Debtor did not solicit or obtain the consent of 100% of the unit owners in recording this deed, but nevertheless complied with § 5(b)(1).  *See id*.  If the interpretation advocated by Bourne and Delise were accurate, then the existence of their ownership interests would certainly be subject to challenge.

the ordinary meaning of the phrase "made possible" as used in § 5(b)(1).  In essence, the

Bankruptcy Court found that as long as the master deed did not prevent a calculation of the

future unit owners' interests in the common areas from being undertaken at the time of any

amendment to the master deed, then it "made possible an accurate determination of each unit's

undivided interest that would result therefrom."   Bourne and Delise have neither presented any

decision which mandates a different approach nor asserted that the Association failed to meet the

requirements of § 5(b)(2)(iii).  Therefore, the Bankruptcy Court's interpretation and application

of the statute should be affirmed.

II.     **The Bankruptcy Court Did Not Err When It Confirmed the Debtor's Plan of Reorganization**

    A.     **The Debtor Properly Modified the First Amended Plan Prior to Confirmation.**

The proponent of a plan of reorganization may modify that plan at any time before

confirmation, so long as the proposed modification does not fail to meet the requirements of

sections 1122 and 1123 of the Bankruptcy Code.  *See* 11 U.S.C. § 1127(a).  Section 1122(b)

specifically authorizes a plan proponent to designate a separate class of claims consisting of all

unsecured claims less than a certain amount that the court approves as reasonable and necessary

for convenience.   Section 1123 lists the necessary components of a plan of reorganization and

there is no allegation by the Appellants that the Debtor's Second Amended Plan violates that

provision.  Upon filing, the modified plan replaces the original plan.  *See* 11 U.S.C. § 1127(a).

"Claim classification is a factual issue and is reviewed for clear error."  *Beal Bank S.S.B.*

*v. Waters Edge L.P.*, 248 B.R. 668, 690 (D. Mass. 2000).  In the absence of evidence that

classifications were based on an "improper business justification," a bankruptcy court's approval

of separate classifications contained within a plan will not be disturbed.  *Id.* at 691-92.

The First Amended Plan grouped all non-insider, unsecured claims within the same class: Class 1 Allowed Unsecured Claims.  These claims included the Association Claim, the disputed Tyler Claim, and the three small claims acquired by Bourne, Delise, and Tyler during the Debtor's bankruptcy proceeding.  Under the First Amended Plan, the Debtor proposed that these five claims would receive an initial distribution of 5% of the allowed amount of those claims and, thereafter, eventually receive a pro rata distribution of any cash subsequently earned by the Debtor as a result of its eventual sale of either (i) the Phasing Rights to a third-party developer or (ii) the condominium units to be developed by the Debtor.  Under this plan, there was no guaranty that any of these claims would receive a distribution of more than 5% of the allowed amount of the claim and there was no date certain by which any amount over the 5% distribution would be paid.  Accordingly, these claims were impaired as that term is used by the Bankruptcy Code.  *See* 11 U.S.C. § 1124.

Bourne, Delise, and Tyler objected to the First Amended Plan on the grounds that it was not feasible (i.e., that confirmation of the plan is "likely to be followed by the liquidation, or the need for further financial reorganization).  *See* Debtor's Appendix, Ex. 5 (Appellants' Plan Objection).  The principal grounds for this assertion was that the First Amended Plan and, hence, the payment of all claims in Class 1, was contingent upon the successful resolution of the Phasing Rights Motion in favor of the Debtor.[4]  As a consequence, the Debtor could not guarantee that it had the financial wherewithal to pay the claims held by Bourne, Delise, and Tyler.

_____

[4] In a section of their objection entitled, "Northwood/Tashmoo's Plan is highly speculative wishful thinking.  It is not Feasible,"  the appellants asserted that, "The promised payments in the Northwood/Tashmoo plan are dependent on the Debtor constructing and selling additional condominium units or sale of the right to do so." *See* Debtor's Appendix, Ex. 5 (Appellants' Plan Objection).

The Second Amended Plan submitted by the Debtor and Tashmoo squarely addressed the objection to the plan's feasibility by agreeing to pay the Appellants' claims in full, once they are allowed by the Bankruptcy Court.  Consistent with § 1122(b), the Second Amended Plan created a new class of claims under Class 1 for all unsecured claims in an amount less than $750.00.  By definition, the Convenience Class included each of the three claims acquired by the Appellants during the Debtor's bankruptcy proceeding.  As a result, the Second Amended Plan provided that all Convenience Class claims would be paid in full, immediately upon the Effective Date.  The payment of these claims was no longer contingent upon the Debtor's sale of either the Phasing Rights or the condominium units to be constructed.

In a similar fashion, the disputed Tyler Claim was placed in a separate class, identified as Class 2 under the Second Amended Plan.  As with the Convenience Class, the Second Amended Plan provided that the Tyler Claim would be paid in full upon the entry of a final, non-appealable order allowing that claim in a specific amount.[5]  Depending upon the timing of the entry of such an order, the Second Amended Plan provided that the Tyler Claim could be satisfied from a variety of the Debtor's assets, including cash on hand (approximately $150,000 on the date the Second Amended Plan was confirmed), the sale or mortgaging of the condominium unit owned by the Debtor (which the Debtor estimated had a market value of approximately $450,000 on the date the Second Amended Plan was confirmed), the more than $600,000 in funds held in escrow by the Association (subject to authorization from the Association), and the proceeds from the sale of the Phasing Rights.  In addition, the Debtor presented evidence to support a finding that

---

[5] Despite Tyler's assertions to the contrary the Second Amended Plan does not require an escrow account to be funded in the full amount claimed due by him under the Tyler Claim pending a ruling on the Debtor's objection to that claim.

Tashmoo had sufficient assets available to satisfy the Tyler claim or to indemnify the Debtor for any expense it would occur in arranging to have that claim paid in full, once allowed.

Based on the improved treatment of the Appellants' claims provided by the Second Amended Plan, the Bankruptcy Court was justified in finding that "the reclassification improves the financial position of Bourne, Delise, and Tyler by providing for full payment of their claims and, hence, does not adversely affect them." *See* Appellants' Appendix Ex. 2, Transcript of Bankruptcy Court Decision Regarding Confirmation Hearing (D.N. 358) at 2. Although the Appellants did assert that the Debtor and Tashmoo were engaged in improper "gerrymandering" of classes, they provided no evidence of any alleged wrongdoing such as artificially impairing a class.[6] *Compare Beal Bank*, 248 B.R. at 690-91 (where debtor was accused of being able to pay certain claims in full on the plan's effective date, but chose not to in order to maximize a plan's chance of being accepted). The only impaired class was comprised of the Association Claim and there is no dispute that the Debtor was unable to pay that claim in full on the Effective Date of the Second Amended Plan. By accepting the less advantageous treatment offered to it by the Second Amended Plan, the Association was, in effect, agreeing to subordinate a portion of its claims to those of other unsecured creditors, thus justifying its separate classification. *See In re River Valley Fitness One L.P.,* 2003 Bankr. LEXIS 1252, *27-28 (Bankr. D. N.H. September 19, 2003).

After considering these issues and the evidence placed before it, the Bankruptcy Court found that it was the Appellants who were acting with improper purposes when it noted that,

---

[6] Despite their claim that the co-proponents engaged in impermissible claim classifications, the Appellants failed to name one of the proponents, Tashmoo, to this appeal. It is unclear how the Court can grant the relief sought by the Appellants when all interested parties were not made party to this appeal. *See* Debtor's Appendix 22 (Appellants' Opposition to Northwood Properties, LLC's Motion to Dismiss Appeal).

"Bourne, Delise, and Tyler have waged a campaign, apparently commenced at least in part pre-petition against the reorganization contemplated in [the Second Amended Plan]. Apparently, they would rather wrest control over the debtor's development rights from the debtor than have their claims full paid under the debtor's plan." *See* Appellants' Appendix Ex. 2, Transcript of Bankruptcy Court Decision Regarding Confirmation Hearing (D.N. 358) at 2. In light of the foregoing, the Bankruptcy Court did not err when it allowed the Debtor and Tashmoo to modify the First Amended Plan by filing the Second Amended Plan.

**B.      The Bankruptcy Court's Finding that the Second Amended Plan was Feasible Was Not Clearly Erroneous.**

In order for a plan to be confirmed, a bankruptcy court must conclude that. "[c]onfirmation of the plan is not likely to be followed by the liquidation, or the need for further financial reorganization." 11 U.S.C. § 1129(a)(11). At the confirmation hearing, the Debtor presented evidence in support of the feasibility of the Second Amended Plan through the testimony of Ross Hamlin and the introduction of various exhibits. The Appellants were present at this hearing and they had a full and fair opportunity to cross-examine Mr. Hamlin and introduce any evidence in support of their contention that the Second Amended Plan was not feasible. *See* Debtor's Appendix, Ex. 15 (Exhibits Entered by Debtor at Confirmation). While they did engage in a limited cross-examination of Mr. Hamlin, they did not introduce any evidence that to suggest that the Debtor and Tashmoo would be unable to meet the financial obligations outlined in the Second Amended Plan.

On appeal, the only argument that the Appellants present in support of their assertion that the Second Amended Plan is not feasible is their contention that the Bankruptcy Court erred when it denied the Phasing Rights Motion and, without the Phasing Rights, the Debtor cannot meet the financial obligations of the plan. This argument is not supported by any case law or any

facts.  Although the Debtor agrees that the efficacy of the Second Amended Plan was dependent

upon the denial of the Phasing Rights Motion, that motion has been denied and, therefore, all

obstacles to feasibility have been removed.  Accordingly, the Debtor met its burden at the

hearing and the Bankruptcy Court's finding that, "[t]he evidence adduced by the debtor makes

clear that the debtor has the financial resources to make the payments required under the plan"

was not clearly erroneous. *See* Appellants' Appendix Ex.  2, Transcript of Bankruptcy Court

Decision Regarding Confirmation Hearing (D.N. 358) at 2.

**CONCLUSION**

Based upon the above, the Debtor requests this Court to affirm all of the decisions of the

Bankruptcy Court being challenged through this appeal.

Respectfully Submitted,

NORTHWOOD PROPERTIES, LLC

By its Attorneys,
RIEMER & BRAUNSTEIN LLP


/s/ Jeffrey D. Ganz

Dated: November 14, 2006            Jeffrey D. Ganz, BBO #564375
                                    Christopher M. Condon, BBO #652430
                                    Riemer & Braunstein LLP
                                    Three Center Plaza
                                    Boston, Massachusetts 02108
                                    Telephone: (617) 523-9000
                                    Facsimile: (617) 880-3456
                                    jganz@riemerlaw.com


980752.3